IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:21CV222-MOC
(3:19CR9-MOC)

| | |
|---|---|
| LUCAS KENNETH SABATINO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Lucas Kenneth Sabatino has moved to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255, arguing that his attorney provided ineffective assistance by failing to raise issues relating to his mental capacity at the time he committed the offense or during the plea hearing. The United States respectfully requests that this Court deny the motion because Sabatino's claims are conclusory and he has shown neither deficient performance, nor prejudice by counsel.

**BACKGROUND AND PROCEDURAL HISTORY**

In July of 2018, when Sabatino was 36 years old, he made contact with a 13-year-old girl through a chat application and asked the girl, "So what age you start

with guys?" Doc. No. 26, at 3, 5 (PSR).[1] The girl told Sabatino that she was 13 years old and that her "first time" had been that year. PSR 5. Sabatino asked the girl to take a picture of herself with her legs open, "[s]howing everything." *Id.* After the girl sent Sabatino a picture of her vagina, he responded that it looked "nice" and "tight." *Id.* Sabatino discussed the size of his penis and asked the girl whether she would engage in oral sex, "ride" him, and try anal sex. *Id.*

Over the course of two days, Sabatino conversed with his victim and made plans to travel from Ohio to North Carolina to meet her. *Id.* Sabatino proposed staying "a week or more." *Id.* And when his victim asked what they would do when he was in North Carolina, he responded that they would get something to eat and hang out, "before the wild sex starts." *Id.*

When interviewed by the FBI, Sabatino admitted that he knew his victim was 13 years old and that he researched traveling to North Carolina. *Id.* Sabatino denied, however, that he intended to travel to North Carolina. *Id.* Sabatino also admitted that he had engaged in chat conversation and had obtained nude photographs of five or six other minor girls, including another 13-year-old. *Id.* Sabatino had previously been convicted of corrupting a minor based on his admission that he had sex with a 13-year-old girl when he was 20 years old. *Id.*

A federal grand jury indicted Sabatino, charging him with enticing an individual he believed to be a minor to engage in sexual activities for the purpose of producing child pornography, 18 U.S.C. § 2251(a), (e) (Count One); and using a

[1] Unless otherwise indicated, all docket references refer to documents in the underlying criminal proceedings.

facility of interstate commerce to entice a minor to engage in sexual activity for which he could be charged with an offense, 18 U.S.C. § 2422(b) (Count Two). Doc. No. 1 (Indict.). Sabatino entered into a plea agreement with the United States, agreeing to plead guilty to Count One, sexual exploitation of children. Doc. No. 17, at 1 (Plea Agrmt.). The United States agreed to dismiss the remaining count against him. *Id.*

The magistrate judge conducted a hearing in accordance with Federal Rule of Criminal Procedure 11 and found that Sabatino's guilty plea was made knowingly and voluntarily. Doc. No. 42, at 18–19 (Plea Tr.). During the colloquy, Sabatino reported that he was not under the influence of "alcohol, medicines, or drugs of any kind," that his mind was clear, and that he understood that he was in court "to enter a guilty plea that [could not] later be withdrawn." *Id.* at 3–4. Sabatino affirmed that he understood the charge to which he was pleading guilty and its mandatory-minimum and maximum penalties, which included a mandatory-minimum term of 15 years in prison. *Id.* at 4–6. Sabatino also affirmed that he was guilty of the sexual exploitation offense to which he was pleading guilty. *Id.* at 9.

After the prosecutor summarized the terms of the parties' plea agreement, Sabatino affirmed that he had reviewed his plea agreement carefully with his attorney and that he understood its terms. *Id.* at 9–13. Sabatino also affirmed that he understood that he was waiving the right to challenge his conviction and sentence in any post-conviction proceeding, except on the bases of ineffective

assistance of counsel or prosecutorial misconduct. *Id.* at 14. Sabatino testified that no one had threatened, intimidated, or forced him to enter his guilty plea. *Id.* at 15.

When asked whether he had had enough time to discuss with his lawyer "any possible defenses" he might have to the charges against him, Sabatino initially responded, "Not really." *Id.* at 15–16. But immediately thereafter, Sabatino affirmed that he had had enough time to talk with his lawyer about his case and that he had discussed possible defenses that he might have to the charges, explaining that he "guess[ed] there isn't many." *Id.* at 16. The magistrate judge told Sabatino that the time to discuss possible defenses to the charges against him was before he pleaded guilty, and Sabatino affirmed repeatedly that he had talked with his attorney about any possible defenses and did not need to talk with her further before entering his plea. *Id.* at 16–18.

When asked to comment, Sabatino's counsel stated that it was "just a difficult matter" but that Sabatino was ready to proceed. *Id.* at 17. She also stated that she had reviewed with Sabatino "all features of his case" and that she was satisfied that he understood the terms and consequences of his plea agreement. *Id.* at 18. Sabatino also stated that he was satisfied with his attorney's services. *Id.* at 17. At the conclusion of the hearing, when asked if he had any further comments, Sabatino stated, "Only thing I can really say is I'm sorry. I didn't mean for this to happen." *Id*. at 17–18.

Two-and-a-half months later, Sabatino wrote a pro se letter to the Court, asserting that his attorney was "not looking out for my best interest" and that he

felt as though he was "forced into signing" his plea deal because there were "no other options." Doc. No. 43, at 1. Sabatino admitted, "i made a bad mistake and i should do time but 15 year's for haveing no crimal history is all my attorney want's to fight for." *Id.* (misspellings in original). He insisted that he was not trying to make excuses, but just wanted to receive help for his mental health issues. *Id.*

The magistrate judge conducted a hearing in response to Sabatino's letter. Doc. No. 48 (Inquiry Tr.). Sabatino explained to the Court that he did not feel that he had had adequate time to think through his decision to plead guilty and that he did not "fully understand what [he] was signing." *Id.* at 5. Sabatino also stated that he did not understand why there could not be "a better plea to help [him] overcome [his] mental health issues and a couple other issues." *Id.* at 8–9.

Defense counsel explained that her efforts to secure a plea agreement that would have resulted in a mandatory-minimum sentence of 10 years were unsuccessful and that the best result she could achieve was a plea to the exploitation offense, which carried a 15-year mandatory minimum. Inquiry Tr. 6. She told the Court that she visited Sabatino numerous times, explaining his options in detail, including trial or a plea, and reviewing the plea agreement carefully. *Id.* at 6–7 (noting over 14 different visits by her or someone from her office). Counsel told the Court that she read the agreement verbatim but also summarized each provision because "a lot of it is in legalese" and "that is difficult for many people, not just Mr. Sabatino." *Id.* at 7–8. At no time did Sabatino appear not to understand the terms of his agreement, and at no time did she pressure him to plead guilty. *Id.*

The magistrate judge asked counsel whether the mental-health issues Sabatino raised would be relevant at his sentencing hearing, and counsel responded that she had "already hired and had an expert talk with" Sabatino so that she could argue those issues in mitigation. *Id.* at 9. Counsel also stated that her office had "been in contact with the [Bureau of Prisons] to ensure that [Sabatino would get] the proper treatment and medications." *Id.* After the magistrate judge stated that counsel had worked hard on his case and done a "very good job," Sabatino stated that it appeared that there would be no better offer for him and that he was "not trying to make excuses for what [he] did, wanting only "for people to understand that [he wants] help." *Id.* at 10–11. The prosecutor confirmed that a different attorney would not get a better plea deal. *Id.* at 15. Finding that defense counsel had done "her usual good job," the magistrate judge declined to replace her as Sabatino's counsel, and Sabatino acknowledged that there was never "any real doubt" that he would serve time in prison. *Id.* at 18–19.

The probation officer prepared a presentence report and concluded that the Sentencing Guidelines advised a sentence of 15 years in prison, the applicable mandatory-minimum term. PSR 11. Attaching a psychological report conducted by Dr. Ashley King, Sabatino, through counsel, filed a sentencing memorandum asking the Court to impose the mandatory-minimum sentence. Doc. No. 30. In her report, Dr. King summarized the physical and sexual abuse Sabatino suffered as a child and reported that Sabatino was in the "low average range of intellectual functioning. Doc. No. 30, exh.1, at 2–4, 7. Dr. King found that Sabatino has

cognitive deficits and chronic post-traumatic stress disorder and that he "has trouble with using good judgment" related to a "neurodevelopmental problem, possibly rooted in childhood trauma." *Id.* at 8–10 (quotes at 10). Dr. King also found that Sabatino's test results were consistent with "an avoidant, paranoid, and borderline personality" but that he "clearly does not suffer from a psychotic disorder." *Id.* at 8. And Dr. King found that Sabatino suffered from an unspecified alcohol and cannabis use disorder. *Id.* Dr. King made a number of treatment recommendations designed to reduce Sabatino's risk of recidivism. *Id.* at 10–12.

At the sentencing hearing, Sabatino affirmed that his guilty plea was knowingly and voluntarily made. Doc. No. 43, at 2–3 (Sent. Tr.). During his allocution, Sabatino told the Court that he had not wanted "this to happen" and that if he had gotten help earlier, it probably would not have happened. *Id.* at 14. Sabatino stated that he was angry, depressed, and had a lot of "rage from people getting away with doing things to [him]." *Id.* at 15. Sabatino denied that he ever intended to travel to North Carolina to meet his victim and that while he could be angry, he "just want[ed] all this pain to go away." *Id.* at 16. Describing Sabatino's offense as "serious," this Court sentenced him to 180 months in prison, the mandatory-minimum term. *Id.* at 18–20.

Sabatino appealed, arguing that his attorney had provided ineffective assistance of counsel "because she failed to raise issues relating to Sabatino's mental capacity when he committed his crime and at the time he entered his guilty plea." Doc. No. 49. The Fourth Circuit denied the United States' motion to dismiss

the appeal, but affirmed this Court's judgment, holding that the record did not conclusively show ineffective assistance of counsel. *Id.* at 2–3.

Sabatino filed the present motion to vacate in the Eastern District of Wisconsin. Civ. Doc. No. 1. The district court in the Eastern District of Wisconsin determined that it lacked jurisdiction over the case and transferred it to this Court, Civ. Doc. No. 3, which ordered the United States to respond, Civ. Doc. No. 4.

## ARGUMENT

**This Court should deny Sabatino's motion to vacate because he has not met his burden to show deficient performance or prejudice.**

This Court should deny Sabatino's motion to vacate where his claims are conclusory, he has not shown deficient performance, and he does not allege prejudice. Sabatino's claims echo those he raised on direct appeal. He asserts that counsel was ineffective for failing to raise his mental capacity at the time of the offense and at the time of the plea hearing. Mot. to Vacate 7–8. He also contends that counsel failed to raise these issues "under the correct statutes." *Id.* at 9. And he attaches his appellate response to the United States' Motion to Dismiss his appeal, in which he asserted that his mental health issues were apparent from the record. Civ. Doc. No. 1-1. Sabatino is not entitled to relief as he adds nothing to the claims he unsuccessfully raised on direct appeal.

### A. Ineffective Assistance Standard

Under the Sixth Amendment, criminal defendants have the right to effective assistance of counsel. U.S. CONST. amend. VI. To prevail on a § 2255 claim of ineffective assistance of counsel, a petitioner has the burden of establishing both (1)

that defense counsel's performance was deficient, in that counsel's "representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) that this deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Courts must apply a "highly deferential" standard in reviewing an attorney's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* It is not sufficient to show the mere "'possibility of prejudice.'" *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 494 (1986)). In considering the prejudice prong, a court "can only grant relief under . . . *Strickland* if the 'result of the proceeding was fundamentally unfair or unreliable.'" *Sexton v. French,* 163 F.3d 874, 882 (4th Cir. 1998) (quoting *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)). If a petitioner fails to conclusively demonstrate prejudice, the reviewing court need not consider whether counsel's performance was deficient. *United States v. Terry,* 366 F.3d 312, 315 (4th Cir. 2004).

To establish prejudice in the context of a guilty plea, a petitioner must show that "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Meyer v.*

*Branker,* 506 F.3d 358, 369 (4th Cir. 2007) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)). The petitioner's "subjective preferences" are not dispositive, but rather the test is "whether proceeding to trial would have been objectively reasonable in light of all of the facts," *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012), and whether the petitioner has shown that there is "contemporaneous evidence" supporting his expressed preferences, *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

**B. Sabatino's claims should be dismissed as conclusory.**

Sabatino's claims should be dismissed as conclusory. He alleges only that he "suffered from severe mental issues and substance abuse issues that would impact his mental competency." Mot. to Vacate 9. He does not identify these issues, assert that they existed at the time of his offense conduct or the plea hearing, nor allege that they provided a defense to his offense conduct or invalidated his guilty plea. Rather, he requests remand so "that a determination [can] be made as to his mental competence." *Id*. at 11. Sabatino's vague and conclusory assertions are insufficient to establish that he is entitled to relief. *See United States v. Dyess*, 730 F.3d 354, 359–60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). He has added nothing to the record that the Fourth Circuit found did not conclusively show ineffective assistance of counsel. *Cf. Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (claims considered on direct review may not be recast "under the guise of collateral attack").

### C. Sabatino's claims should be dismissed because he has not shown deficient performance, nor alleged prejudice.

Sabatino's claims also fail on the merits. The decision by defense counsel to present Sabatino's mental-health issues in mitigation of his culpability and not to seek an evaluation of his competency to plead guilty or his capacity at the time of the offense to understand the nature and quality of the wrongfulness of his offense conduct was well within the bounds of reasonable professional judgment. *See United States v. Wilkens*, 338 F. Supp. 3d 387, 394–95 (E.D. Pa. 2018) (holding counsel was not ineffective for failing to investigate potential diminished capacity and involuntary intoxication defenses to manufacturing and possessing child pornography offenses); *Davis v. United States*, 2016 WL 6471012, at *8 (D. Id. Nov. 1, 2016) (holding counsel was not ineffective for failing to raise unsupported mental health defenses). Nothing in Dr. King's report or in any of Sabatino's statements in this Court suggests that he was unable at the time he communicated with his minor victim to understand the nature and quality of his actions or their wrongfulness. *See* 18 U.S.C. § 17(a) (providing an affirmative defense where the defendant, "as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts"). To the contrary, during his interview with investigators, Sabatino admitted that he had discussed engaging in sex with his victim but denied that he actually intended to travel to North Carolina, evidencing his understanding that traveling to engage in sex with a minor would make him more culpable. Sabatino repeatedly apologized for his offense conduct. And while Dr. King's report suggests that Sabatino suffered from post-traumatic stress

disorder and other mental-health conditions, there is no suggestion in the report that he was unable at the time of his offense of appreciating his actions or that they were wrong.

Nor does the record contain any evidence that Sabatino suffered from a mental disease or defect "rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," warranting a motion to determine his competency. *See* 18 U.S.C. § 4241(a). Sabatino's responses during his guilty-plea colloquy and during his status-of-counsel and sentencing hearings were appropriate, and he capably expressed his concerns and his remorse. *See* Plea Tr.; Inquiry Tr.; Sent. Tr. While Sabatino expressed concern about counsel's advice to him to accept the United States' plea offer, that concern demonstrated that he understood that he had pleaded guilty to an offense that required a prison sentence of not less than 15 years. And counsel's description of their meetings makes clear that she did not perceive any incompetency. Accordingly, Sabatino has failed to meet his burden to show that counsel's actions fell outside the wide range of reasonable professional assistance.

Sabatino also has failed to allege prejudice, as he does not claim that he was incompetent at the time of his offense or guilty plea, nor allege that he otherwise would have proceeded to trial or been declared incompetent to proceed. *See Meyer,* 506 F.3d at 369. Instead, he asserts only that these issues should be determined. Mot. to Vacate 11. Absent an allegation or record evidence that Sabatino suffered from a mental-health condition severe enough to support a finding of incompetency,

Sabatino has not shown a reasonable probability of a different result had counsel raised such issues prior to his guilty plea.

Because Sabatino has shown neither deficient performance, nor prejudice, this Court should deny his ineffective assistance claims.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Sabatino's motion.

RESPECTFULLY SUBMITTED this 2nd day of August, 2021.

WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY

s/Elizabeth M. Greenough
Elizabeth M. Greenough, N.Y. Bar No. 2667905
Assistant United States Attorney
227 West Trade Street, Suite 1650
Charlotte, NC 28202
Telephone: 704-344-6222
Fax: 704-344-6229
Email: Elizabeth.Greenough@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that I caused to be served on the next business day a copy of the above response upon the Petitioner by U.S. Mail at the following address:

Lucas Kenneth Sabatino
No. 66307-060
FCI Loretto
Federal Correctional Institution
P.O. Box 1000
Cresson, PA  16630

This 2nd day of August, 2021.

s/Elizabeth M. Greenough
Assistant United States Attorney
USAO Charlotte, NC